IN RE SNOW'S WILL.

(Filed April 9, 1901.)

1. WILLS — *Testamentary Capacity — Execution — Attesting Witnesses.*

> In making a will, the testator must actually see, or be in a position to see, not only the witnesses, but the will itself, at the time of signing the same.

2. EVIDENCE—*Conflicting—Questions for Jury.*

> Where there is conflicting evidence as to a matter, it should be left to the jury.

3. APPEAL BONDS—*Time for Filing—Acts 1889, ch. 135.*

> An appeal bond, filed and sent up with the record, is in time within Acts 1889, ch. 135.

In the matter of the will of Ice Snow, heard by Judge *E. W. Timberlake* and a jury, at November Term, 1900, of Surry County Superior Court. From a judgment sustaining the will, the caveators appealed.

*Thos. H. Sutton,* for the propounder.
*Watson, Buxton & Watson,* for the caveators.

Montgomery, J. On the trial of the issue *devisavit vel non* there was a verdict sustaining the will, and a judgment was rendered by the Court for the propounders. At the time of the execution of the will and the attestation of the witnesses, about ten days before the death of the testator—he was a very sick man and had to be propped up in bed to sign the paper. The only exceptions before the Court by the appellants, the caveators, is upon the refusal of his Honor to give the two special instructions numbered 3 and 4, they being in the following words:

3. That in order to find the witnesses subscribed in the presence of the testator, as contemplated by the statute, they

must find that Ice Snow should have evidence of his own senses to the subscribing by the witnesses, just as he should to a signing for him by another, by his direction and in his presence, so as to exclude the almost impossibility of imposition by substituting one paper for another without detection by the testator; and if they find that he was in such condition that he could not tell whether they signed the paper offered as his will or some other paper, they should answer the issue "No."

4. That upon the testimony as a matter of law, the will offered had not been proved, nor attested as required by statute, and the propounders are not entitled to recover.

The fourth prayer was properly refused, for while there was conflicting evidence both as to the mental capacity of the testator and his ability to see the attestation of the witnesses, and so the matter had to be left to the jury to be decided by them under proper instructions by the Court.

The third prayer the propounders were entitled to, or to one of equivalent import and meaning; and his Honor gave such a one substantially, though not in the same terms. His instruction to the jury was as follows: "In order that the will should have been duly executed, the decedent must be in such a situation, such a position, as will enable him, if he will look, to see the paper-writing which he has signed as it is being subscribed by the witnesses; he must have the opportunity, through the evidence of occular observation, to see the attestation of the paper from the position or situation in which he is, if he will look, and thus exclude the almost impossibility of a substitution of the paper which he has signed with another by some other person." That instruction is in the language of this Court used in the case of *Burney v. Allen,* 125 N. C.,314, on the same point, and where the circumstances as to the facts of signing and attestation were very similar. If the word *condition* in the third prayer may be taken as bear-

ing upon the testamentary capacity of the testator, his Honor in that connection instructed the jury correctly that the testator must have known, at the time of the signing of the paper, the nature of the business, the property he was disposing of, and to whom he was giving it, and that if they were not satisfied that he had such capacity they should answer the issue "No." The evidence in this case introduced by the caveators, tending to prove lack of testamentary capacity, was very strong. That tending to show testamentary capacity was not strong from one standpoint, but the jury, whose province it was to pass upon the evidence, delivered their verdict and we have no control over it, for there was no error of law committed by his Honor, as we have seen.

The motion of the propounders, the appellees, on the ground that the appeal bond was not filed in time under The Code provision was not granted. It is enacted in Chapter 135 of the Acts of 1889 that no appeal should be dismissed in the Supreme Court on the ground that the undertaking on appeal was not filed earlier, or the deposit made earlier, provided the bond should be given or the deposit made before the record of the case is transmitted by the Clerk of the Superior Court to the Supreme Court. The bond was filed and sent up with the record. There was no error in the trial below, and the judgment is

Affirmed.